601 P.2d 1

**Bertha P. JONES, Plaintiff-Appellant,**

v.

**Gary D. JONES, Defendant-Respondent.**

No. 12813.

Supreme Court of Idaho.

Sept. 19, 1979.

Rehearing Denied Oct. 29, 1979.

Jay D. Sudweeks of May, May, Sudweeks & Shindurling, Twin Falls, for plaintiff-appellant.

Lloyd J. Webb of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for defendant-respondent.

McFADDEN, Justice.

Plaintiff-appellant Bertha Jones (wife) brought this action against defendant-respondent Gary Jones (husband) to dissolve the parties' second marriage. The parties were first married in 1953 and divorced in 1975. Prior to the 1975 divorce the parties entered into a separation agreement. This agreement divided all the community property, gave custody of two minor children to wife and two minor children to husband, and provided for child support payments by husband for the two children in wife's custody. In the agreement wife expressly waived any rights to alimony. A default judgment and decree of divorce incorporating the terms of the separation agreement was awarded to husband on June 9, 1975.

In anticipation of their second marriage, the parties entered into a pre-nuptial agreement on October 28, 1975. This agreement adopted, ratified and confirmed the terms of the previous separation agreement and decree of divorce. The pre-nuptial agreement provided that all income earned during the marriage from the parties' separate property should become community property and that all separate debts and property should remain separate. On November 1, 1975, the parties were remarried.

On March 1, 1977, wife commenced this action, seeking a divorce, $1,500 per month permanent alimony, $500 per month child support, and attorney fees. Her second amended complaint, filed July 5, 1977, alleged that all property acquired by the parties since their first marriage in 1953 was community property despite the separation agreement and pre-nuptial agreement. She alleged that both the separation agreement and the pre-nuptial agreement were executed by her without the advice of independent counsel and through fraud, coercion and undue influence on the part of her husband. Husband's answer denied any fraud, coercion or undue influence on either his part or on the part of the attorney who drafted the agreements. He alleged that both agreements were freely and voluntarily executed by wife, and that she had every opportunity to ascertain property values and retain independent advice.

Both sides filed lengthy affidavits and interrogatories regarding the property values and other circumstances of the two agreements. Depositions of both parties and others were taken concerning the valuation of assets disposed of in the agreements and concerning wife's failure to retain independent counsel. On August 8, 1977, husband filed 14 requests for admission under I.R.C.P. 36(a) directed to wife's agreed to valuation of all the community assets before she signed the agreements. Wife failed to respond to the requests for admission within the time limits of the rule. She later filed untimely responses, consisting of a one word denial to each request. Husband moved to strike the untimely answers, and the court after a hearing granted his motion. The requests were therefore deemed admitted to the effect that the parties' agreed-to valuation was also equal to the fair market value of the property.

The husband then moved for partial summary judgment, requesting a determination of the validity of both agreements. The motion was based upon the pleadings, affidavits, and discovery (including the requests for admission deemed admitted by the failure to respond.) After a hearing, the district court granted the partial summary judgment, concluding that no evidence had been submitted raising any issue of fact as to an unfair division of the property, and ruling that both agreements were validly executed and binding. The wife moved the court to reconsider the partial summary judgment and also moved to vacate on grounds that had her untimely denials to the requests for admission been allowed the partial summary judgment would not have been granted. Both of these motions were denied by the trial court. The husband thereafter served a second set of requests for admission, directed towards the extent and value of community property acquired since the second marriage. These requests were timely responded to by wife. Additional interrogatories also directed to the acquisition of community property were propounded by wife and duly answered by

husband. Husband then filed a second motion for partial summary judgment for disposition of a remaining issue in the case, i. e. division of the community property acquired since the parties' second marriage. The motion was granted and partial summary judgment entered which divided this community property equally between the parties. The court denied alimony or attorney fees to wife.

On January 5, 1978, the parties went to trial on the remaining issues of dissolution of the marriage, child custody and support, and distribution of an automobile and medical bills not disposed of by the earlier partial summary judgments. Wife's testimony was stipulated to by counsel and she did not appear. Husband appeared and testified. The court thereafter entered its findings of fact, conclusions of law, and final decree of divorce. The net effect of both partial summary judgments and the decree of divorce was: (1) the marriage was dissolved, (2) the community property acquired during the second marriage was divided equally, (3) the best interests of the children dictated that wife have custody of two minor girls and husband have custody of two minor boys, (4) husband was to pay $150 per child per month in child support to wife, (5) the separation agreement and pre-nuptial agreements were not modifiable and would control the division of community property, (6) husband was required to pay all wife's medical expenses incurred prior to the second divorce, and (7) no alimony or attorney fees were awarded.

The first issue on appeal is whether the district court erred in granting partial summary judgment on the validity of the separation agreement and pre-nuptial agreement, i. e. whether there remained genuine issues of material fact which would bar entry of these partial summary judgments. Wife contends that fraud, coercion, and undue influence, as alleged against husband, are issues of fact not susceptible to a determination by summary judgment.

■ It cannot be argued but that if there are genuine issues of material fact, a motion for summary judgment should be denied. *Schaefer v. Elswood Trailer Sales*, 95 Idaho 654, 516 P.2d 1168 (1973); I.R.C.P. 56(c). It is also true that the facts are to be liberally construed in favor of the party opposing the motion for summary judgment and that he is to be given the benefit of all favorable inferences which might be reasonably drawn from the evidence. *Farmer's Ins. Co. of Idaho v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976); *Straley v. Idaho Nuclear Corp.*, 94 Idaho 917, 500 P.2d 218 (1972). However,

"This Court consistently has held that a genuine issue is not created by a mere scintilla of evidence; there must be evidence on which a jury could rely. Summary judgment is proper if the evidence before the court on the motion would warrant a directed verdict if the case were to go to trial. When the moving party presents materials which would entitle him to a directed verdict if presented at trial, the responding party may not hold back his evidence; he must present sufficient materials to establish a triable issue. Those materials must set forth the facts with particularity; for if general averments were sufficient the summary judgment procedure would lose its utility."

*Johnson v. Gorton*, 94 Idaho 595, 598, 495 P.2d 1, 4 (1972) (footnotes omitted); *Cook v. Soltman*, 96 Idaho 187, 525 P.2d 969 (1974).

■ After carefully reviewing the record, we concur with the district court's determination that as to the validity of the agreements, wife has not come forward with evidence sufficient to raise a genuine issue of material fact. She has not, as required by I.R.C.P. 56(e), produced "specific facts showing that there is a genuine issue for trial."

Wife has admitted, by virtue of her failure to deny, that all the property values ascribed by the parties to their community property were fair market values. See I.R.C.P. 36(a). When asked on deposition and by interrogatories actually where the property values were incorrect, she could not say. Nor could she (or her attorney) suggest the names of any witnesses who were

prepared to testify regarding any incorrect property values. Nor had she obtained an independent appraisal of any of the properties. Indeed, as the district court stated in its order granting husband's motion for summary judgment, "the plaintiff here (wife) cannot help us by indicating just how the values first attributed to the property were wrong."

Wife could show no evidence of any fraud or undue influence on her husband's part in the execution of the two agreements. Her only apparent dissatisfaction with the pre-nuptial agreement was that it exhibited a certain lack of trust on her husband's part. As she stated in her deposition: "[t]he dissatisfaction that I expressed was that Gary [husband] would ever do that to me, like that in the first place. It wasn't what I read over that was in it. I said I was the mother of your seven children. We were going back into a marriage with a distrust." This is not evidence of fraud or undue influence sufficient to create a triable issue.

Wife also contends that the marriage separation agreement is void because it was not acknowledged. We find this defect to be immaterial since the agreement was incorporated into the divorce decree and was ratified by the subsequent pre-nuptial agreement which was acknowledged. The first partial summary judgment, determining that both agreements are valid and binding, is therefore affirmed.

■ The second partial summary judgment disposed of the parties' community property acquired since their second marriage. One of the community assets was husband's interest in a profit-sharing or retirement fund set up during the second marriage. The district court awarded wife a one-half share in the asset, but instead of decreeing a lump-sum distribution, the court made the parties tenants in common with wife's share payable when husband received his benefits under the plan. Wife assigns error to this payment scheme, con-

tending that under *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975), a lump-sum payment should have been awarded.

In *Ramsey*, this court ordered a lump-sum settlement to be paid to the wife for her interest in a vested military pension. At the time of the divorce the pension was fully vested and the couple was receiving monthly retirement checks. We held that "in this state upon dissolution of a community by divorce each spouse should have immediate control of his or her share of the community property, or at least within a reasonable time." Id. at 679, 535 P.2d at 60.

Although we do not doubt that in certain circumstances a trial court may properly withhold retirement benefits from the property disposition in favor of a later distribution of such benefits if and when they actually accrue,[1] a trial court must have sufficient facts before it to make a reasoned decision in ordering such a disposition. In the instant case the record is so totally inadequate concerning the retirement fund that we reverse and remand to the trial court, which, after considering any additional evidence which the parties may present, will determine the wife's interest in the husband's retirement program and make suitable provision for payment by husband to wife within a reasonable time of any such amount. *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975). *See Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979). For non-pension cases see *Ripatti v. Ripatti*, 94 Idaho 581, 494 P.2d 1025 (1972); *Lawson v. Lawson*, 87 Idaho 444, 394 P.2d 1008 (1964).

■ The final issue is whether the district court erred in refusing to award wife attorney fees. The issue of future alimony, which the trial court also refused to award, has been stipulated by the parties upon oral argument as moot since wife has remarried. As to the failure to award attorney fees, it is the oft-quoted rule that granting or fail-

---

1. See *Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979), where at the time of divorce husband had worked 19½ years for the City of Burley Fire Department. If he continued to work for the department another 6 months, his retirement rights would fully vest, and he would be entitled to receive benefits if he retired at that time.

ing to grant an award rests within the sound discretion of the trial court. *Mifflin v. Mifflin*, 97 Idaho 895, 556 P.2d 854 (1976); *Loveland v. Loveland*, 91 Idaho 400, 422 P.2d 67 (1967). No abuse of discretion has been shown, and our review of the record discloses none.

The two partial summary judgments and the decree of divorce are affirmed, except as to the disposition of retirement benefits which is reversed and remanded. Appellant's request for attorney fees on appeal is denied. Costs to respondent.

DONALDSON, C. J., and SHEPARD, BAKES and BISTLINE, JJ., concur.

SHEPARD, Justice, specially concurring.

I concur in the majority opinion except as to that portion wherein the majority states "* * * in certain circumstances a trial court may properly withhold retirement benefits from the property disposition in favor of a later distribution of such benefits if and when they actually accrue * * *." Although the majority opinion cites as authority for the above statement the recent decision of this Court in *Shill v. Shill, supra,* in my judgment, that statement was not necessary to the decision and was dicta. In *Shill* the Court stated "[a]n award of a lump sum to a non-employee spouse may be the better remedy where there are substantial amounts of other liquid assets * * *" or where retirement has occurred or is imminent. The Court in *Shill* noted that determination of the value of the pension benefits can be obtained and discounted to present value. "The presence of a substantial amount of other liquid assets will cushion the impact on the employee spouse of having to buy out the other spouse's interest."

Here and in *Shill* there exists "a substantial amount of other liquid assets." In *Shill* the Court only reversed the trial court's award of the cash value of the retirement benefits and remanded for additional evidence. Hence, I cannot agree that *Shill* established the doctrine attributed to it by the majority in the instant case. Rather, I continue to hold to the rule established in *Ramsey v. Ramsey, supra,* which decision, strangely enough, was authored by the author of the opinion in the instant case.