835 P.2d 1331

Herbert K. BELL, Jr., Plaintiff–
Appellant,

v.

Dorothy R. BELL, Defendant–
Respondent.

No. 18839.

Court of Appeals of Idaho.

July 1, 1992.

Petition for Review Denied Aug. 26, 1992.

Herbert K. Bell, Jr., pro se.

Beer & Cain, Boise, for defendant-respondent. Dennis L. Cain, argued.

SWANSTROM, Judge.

Herbert Bell filed for divorce on March 30, 1988. A trial was held on September 27, 1988. A hearing for more evidence was held on November 9, 1988, pursuant to Dorothy Bell's motion to reopen the case for additional evidence. After considering various motions of the parties, a judgment and decree of divorce was entered on May 24, 1989, in favor of Dorothy who was awarded a disproportionate share of the community property in lieu of permanent maintenance. Herbert appealed to the district court which affirmed in part, but remanded the case. Herbert brings this appeal alleging several errors. We affirm the appellate decision of the district court with regard to judgment and decree of divorce entered by the magistrate.

The issues presented are as follows. 1) Did the magistrate err in finding that Herbert was at fault and that Dorothy was without fault? 2) Was the magistrate's classification of certain debts as Herbert's separate debts erroneous? 3) Was the magistrate's decision to reopen the record after trial an abuse of discretion? 4) Did the magistrate err by awarding attorney fees to Dorothy? Herbert also contends that the magistrate's June 4, 1990, special award of attorney fees was erroneous. 5) Should the magistrate have imposed sanctions against Dorothy's counsel, such as disbarment and/or awarded punitive damages against counsel in favor of Herbert? 6) Did the magistrate's characterization of the disproportionate award to Dorothy as being in lieu of maintenance, with the express intent that Herbert's debts not be dischargeable in bankruptcy, violate Herbert's rights under the Fourteenth Amendment? 7) Were the magistrate and district judge biased against Herbert, and should they be disqualified from further proceedings in this case?

## FACTS AND PROCEDURE

The parties were married in 1957 while Herbert was in the Air Force, and they have lived in Idaho since 1968. They have one child, and she is over the age of majority. Herbert is a certified public accountant and holds a law degree, as well as a master's degree in business administration. Herbert has been the major source of income for the community. He taught accounting at Boise State University and also worked seven years for the State of Idaho Department of Finance. After his retirement from state employment, he started his own accounting business. At the time of the divorce, Dorothy had attended college for approximately two years but had not yet earned a degree. Dorothy has not worked outside the home other than on a volunteer basis since approximately 1973.

Herbert accumulated substantial debt during the marriage. Dorothy attempted to protect herself from future liability by entering into an agreement with Herbert on April 24, 1986. The agreement provided that Dorothy would not be liable for debts on certain credit card accounts specified in the agreement, and that the parties would bear sole obligation for debts incurred by each from the date of the agreement.

Herbert filed a complaint for divorce on March 30, 1988. Dorothy filed an answer and counterclaim. In June, 1988, the court

ordered Herbert to pay temporary maintenance to Dorothy. After the one-day trial, Dorothy moved to reopen the record for additional evidence concerning Herbert's disclosure of his bank accounts and other financial information. The hearing was held on November 9, 1988. Dorothy proved that Herbert had executed a large bank transaction, but she failed to prove any net effect revealing hidden income, and thus no significant evidence was presented. From November through March, several motions were made by the parties involving temporary maintenance and attorney fees.

On March 30, 1989, the court heard Dorothy's motion for contempt which was based on Herbert's failure to pay temporary maintenance payments for December and January. Herbert maintained that he had voluntarily agreed to the order in June, 1988, because it contemplated maintenance through mid-October, 1988, when the divorce would be final, given the trial date of September 27. In spite of his contentions, Herbert failed to move to terminate or reduce the temporary maintenance until November, 1988, and he did not set it for hearing until December 22, 1988. Based on the above proceedings, the magistrate concluded that Herbert's temporary maintenance obligations terminated on December 31, 1988.

Although Dorothy had requested permanent maintenance and a disproportionate award in her counterclaim, the magistrate would not award her both; rather, he informed Dorothy that she could choose one or the other. Dorothy elected to receive a disproportionate award of community property, including the family residence. The magistrate's findings of fact and conclusions of law were filed May 9, 1989. The magistrate stated that the entry of the divorce decree was prolonged by Dorothy's motion to reopen the case, and by her delay in notifying the court of her preference for either maintenance or a disproportionate award of community property. The magistrate stated, however, that the delays did not amount to bad faith on behalf of Dorothy.

In his findings, the magistrate determined that Herbert was at fault, he should pay the outstanding balances of both attorneys' fees at the rate of $125 per month, Dorothy was without fault, and that she lacked sufficient property to provide for herself. Under the circumstances, the magistrate concluded that a disproportionate award of the community assets in lieu of spousal maintenance would be appropriate.

Consistent with the prior findings, the judgment and decree of divorce provided for the award of the following community assets to Herbert with specified values determined by the court totalling $63,878: one car, assorted household items, various securities and bank accounts, a lot in Idaho City, his accounting practice, and the present value of his Idaho and twenty percent of his Air Force retirements. Herbert was assigned community debts totalling $20,434. Herbert was awarded certain stock as his separate property amounting to $2,483. The judgment also provided that Herbert assume any debt owed on the separately-owned stock and all other debts of the parties, except for the home mortgage allocated to Dorothy, amounting to approximately $45,000. The allocation of this debt to Herbert was based on the agreement between the parties made April 24, 1986. That agreement provided that Dorothy would not be liable for prior community debts incurred by Herbert on certain specified accounts. The agreement also provided that all debts incurred by each party after the date of the agreement would be the separate debts of each.

Dorothy was awarded community assets including the residence, the other car, and some securities and bank accounts totalling $97,229. Dorothy was ordered to assume the community debt on the residence of $12,984.

## STANDARD OF REVIEW

When a case originates in the magistrate division, is appealed to the district court, and is subsequently appealed, we review the magistrate's decision independent from, but with due regard for, the

district court's decision. *McNelis v. McNelis*, 119 Idaho 349, 806 P.2d 442 (1991). We will uphold factual findings where they are supported by substantial competent evidence. *Hentges v. Hentges*, 115 Idaho 192, 765 P.2d 1094 (Ct.App.1988).

## DISCUSSION

The first issue Herbert raises is whether the magistrate erred in finding that he was at fault without attributing fault to Dorothy. Herbert also contends that the magistrate should have identified which provision of I.C. § 32–603 constituted the grounds for divorce.

■ Dorothy contends that the issue of fault is moot because it applies only with respect to Dorothy's entitlement to maintenance. Although she had requested maintenance in her answer and counterclaim, she chose to receive a disproportionate share of the community assets. At the time of the Bells' divorce, a finding of fault was required where maintenance was awarded. I.C. § 32–705.[1] Dorothy contends that because she elected the disproportionate award, the magistrate's finding of fault is inconsequential, and therefore, Herbert's challenge is moot. We disagree.

Because of the finding of fault on behalf of Herbert, the magistrate granted Dorothy the divorce. Indirectly, the finding is one of the reasons for the disproportionate award of community assets to Dorothy, because the award was in lieu of maintenance. Furthermore, for a court to award attorney fees under I.C. § 32–704(2), it must consider the financial resources of the parties and the factors in I.C. § 32–705. The magistrate awarded attorney fees to Dorothy and at that time, I.C. § 32–705 required a finding of fault. Even the revised version provides that fault is a factor to be considered, although not a mandatory element. We reject Dorothy's argument that the magistrate's finding of fault is now moot.

We next address Herbert's contention that the magistrate should have specified the reasons for his finding of fault within those grounds contained in I.C. § 32–603. Although it is preferable for a magistrate to delineate the specific grounds for awarding a divorce contained in I.C. § 32–603, we will not overturn an award of divorce based upon the fault of one spouse, where the basis for such a finding is supported by substantial competent evidence. *Cf. Hentges v. Hentges, supra* (magistrates encouraged to state specific reasons for awarding disparate division of community property, but where reasons clearly appear in the record, failure to identify the reasons will not constitute reversible error). Analogous is the rule that, "[w]here an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory." *State Dept. of Health & Welfare v. Engelbert*, 114 Idaho 89, 753 P.2d 825 (1988).

■ Herbert argues that the magistrate erred, and that his conclusion of fault is not supported by substantial competent evidence. Herbert contends that his testimony that Dorothy was dominant and verbally abusive towards him was uncontroverted. The record does not support Herbert's contention. Rather, Dorothy testified at trial that she had never verbally abused Herbert in the manner he had testified to. Dorothy points to evidence of a number of romantic letters between Herbert and a woman in Germany. Dorothy contends that at a minimum these letters are evidence of extreme cruelty on behalf of Herbert, and that they may even support a finding of adultery. *Angleton v. Angleton*, 84 Idaho 184, 370 P.2d 788 (1962); I.C. §§ 32–603(2), –605. As further evidence of extreme cruelty, Dorothy points to the fact that during most of their marriage, Herbert was an alcoholic. Dorothy also claims that the onerous community debt that Herbert incurred supports an award of divorce in favor of Dorothy based on extreme cruelty.

---

**1.** The statute has since been amended; it no longer requires a specific finding of fault in order for maintenance to be awarded. I.C. § 32–705 (Supp.1991). Nevertheless, fault is a factor that may be the basis for an award of maintenance under the amended statute. I.C. § 32–705(2)(g) (Supp.1991).

526

Because the case was tried without a jury, the fact-finding rested with the magistrate. We give due regard for a magistrate's findings where they involve resolution of discrepant testimony. *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 812 P.2d 253 (1991). Because there is substantial, albeit disputed, evidence of fault on the part of Herbert, we are not persuaded that the magistrate's finding was clearly erroneous. The failure of the magistrate to delineate the specific reason for the finding of fault as set forth in I.C. § 32–603, as the basis for the award of divorce is not error where as here, the reasons are obvious in the record. *Cf. Hentges v. Hentges, supra.*

■ The second issue Herbert raises on appeal is whether the magistrate erred in classifying certain debts as Herbert's separate debts, amounting to approximately $45,000, pursuant to the agreement signed by the parties on April 24, 1986. Herbert testified at trial that he signed the agreement under "some duress" because Dorothy had threatened him with divorce if he refused to sign. He contends that his testimony was not refuted and therefore is binding upon the court. Herbert also contends that the debts are community debts, because the goods or services obtained on credit benefited the community. There exists a presumption in Idaho that property obtained during marriage is community property. *Bowlden v. Bowlden*, 118 Idaho 84, 794 P.2d 1140 (1990). Herbert thus contends that debts incurred during his marriage must be presumed to be community in nature.

■ Contrary to Herbert's assertion, the record reflects that Dorothy did refute Herbert's testimony regarding duress. Dorothy testified that she did not think that she had ever stated and had not intended that Herbert must sign the agreement or face divorce. The language of the agreement is clear that all debts incurred prior to April 24, 1986, on certain named accounts were to be satisfied by Herbert. The agreement also provided that all debts incurred after April 24, 1986, were to be the separate debts of each spouse. This clear language overcomes the presumption that the character of these debts is community. Herbert has not shown that the magistrate's decision to strictly enforce the agreement was clearly erroneous given the deference we afford the trial court where its decision involves weighing the testimony and determining the credibility of witnesses. *Alumet v. Bear Lake Grazing Co., supra;* I.R.C.P. 52(a).

■ The third issue Herbert raises is whether the magistrate erred in allowing Dorothy to reopen the case for additional evidence. We will not reverse the magistrate's decision absent an abuse of discretion. *County of Bonner v. Dyer*, 92 Idaho 699, 448 P.2d 986 (1968). There was reason to believe that Herbert had not completely disclosed his financial status in the pretrial discovery, due to evidence of large bank transactions which was not discovered until after trial. However, the evidence from the subsequent hearing did not have any significant impact on the magistrate's findings because Dorothy failed to prove any substantial net effect with respect to the evidence of the account balances admitted at trial. Regardless of the lack of significant impact on the outcome, Herbert has failed to demonstrate that the magistrate's decision to reopen was an abuse of discretion.

Herbert's fourth issue concerns attorney fees. Herbert asserts that the magistrate erred in ruling that Herbert should pay the outstanding balance of Dorothy's attorney fees as of May 24, 1989, amounting to $3,845.20. Herbert contends that the magistrate erred not only by ordering him to pay Dorothy's attorney fees, but also by ordering him to pay those fees directly, rather than treating the fee award as a community debt and ordering the satisfaction of the fees with community assets prior to the award of the community property. Herbert also contends that the magistrate's order of June 4, 1990, awarding attorney fees in the amount of $385 to Dorothy constituted error. The fees were incurred in response to Herbert's motion for I.R.C.P. 11 sanctions or to reopen the

case which was denied. We discuss each of these sub-issues in turn.

■ The decision to award attorney fees is within the court's sound discretion. *Sherry v. Sherry*, 108 Idaho 645, 701 P.2d 265 (Ct.App.1985) (citing *Martsch v. Martsch*, 103 Idaho 142, 645 P.2d 882 (1982)). In order to award attorney fees, the court should state the reasons for its decision, unless the reasons are obvious in the record. *Bailey v. Bailey*, 107 Idaho 324, 329, 689 P.2d 216, 221 (Ct.App.1984). The court " 'at a minimum should note the existence of the legislative guidelines and should identify those factors which the judge has weighed in arriving at his decision.' " *Jones v. Jones*, 117 Idaho 621, 626, 790 P.2d 914, 919 (quoting *Bailey v. Bailey, supra* ) (1990).

■ The magistrate's findings of fact set forth why Herbert was ordered to pay the parties' unpaid attorney fees. The magistrate noted that he had considered the parties' financial resources, as well as the other factors listed in I.C. § 32–705, which included the existence of fault. I.C. § 32–704(2). While the magistrate did not delineate the specific factors he considered, it is apparent from the record that two reasons were the amount of community property awarded to the parties and the potential earning capacity of each party. It is undisputed that Herbert was the breadwinner of the family; he has significant work experience, an extensive education and owns a business. The opposite is true for Dorothy given her twenty-year hiatus from the work-force. The record reflects that she sought employment prior to the trial and did not secure any. We cannot conclude that the magistrate abused his discretion in making this award.

We now address Herbert's contention that the magistrate erred in failing to classify the unpaid attorney fees as community debts. Herbert cites *Josephson v. Josephson*, 115 Idaho 1142, 1151, 772 P.2d 1236, 1245 (Ct.App.1989), for the principle that the attorney fees, as community debts, are to be paid before the division of the property. The district court agreed with Herbert based on *Josephson, supra* (citing *Mur-*

*phey v. Murphey*, 103 Idaho 720, 653 P.2d 441 (1982) and *Mifflin, v. Mifflin*, 97 Idaho 895, 556 P.2d 854 (1976)). The law provides that the appropriate standard to apply to a motion for Rule 11 sanctions is "reasonableness under the circumstances, and a duty to make a reasonable inquiry prior to filing an action...." *Durrant v. Christensen*, 117 Idaho 70, 74, 785 P.2d 634, 638 (1990).

The Supreme Court's holding in *Mifflin* was clearly based on the then-existing language of I.C. § 32–708. *Mifflin*, 97 Idaho at 897, 556 P.2d at 856. At the time, I.C. § 32–708 provided that awards of attorney fees should be satisfied out of community assets prior to the property division. The 1980 amendment to I.C. § 32–708 conspicuously left out the application of its provisions to I.C. § 32–704, the section allowing attorney fees. Other than this deletion, the statute remained essentially unchanged. *See* 1980 Idaho Sess. Laws, ch. 378, § 7 at 964. As the Supreme Court stated in *Beesley v. Beesley*, 114 Idaho 536, 542–43 n. 7, 758 P.2d 695, 701–02 n. 7 (1988), "When I.C. §§ 32–704 and 32–708 were revised in 1980, the requirement that attorney fees be satisfied first from community assets was also removed." The basis for our ruling on that issue in *Josephson* was incorrect, given the legislative change which occurred in 1980.

■ The magistrate ordered that Herbert pay Dorothy's attorney fees out of his future earnings, instead of providing that the debt be paid out of community assets prior to distribution. Because there no longer existed a legislative prohibition to the magistrate's order, we hold that he did not err. *Desfosses v. Desfosses*, 120 Idaho 354, 815 P.2d 1094 (Ct.App.1991).

■ Finally, in respect to the fee awards, Herbert asserts that the court erred in awarding $385 in attorney fees to Dorothy for successfully defeating Herbert's motion for Rule 11 sanctions or to reopen the case pursuant to Rule 60(b). The magistrate based this award on the parties' financial resources and upon the other factors stated in I.C. § 32–705, there-

by relying on I.C. § 32–704(2), without specifically citing that section.

Herbert contends that the supplemental affidavit, filed by Dorothy's counsel at the request of the magistrate to detail the fees claimed, was untimely under Rule 54(d)(5). The decision to allow the untimely supplemental affidavit was within the court's discretion. *Ada County Hwy. Dist. v. Acarrequi*, 105 Idaho 873, 673 P.2d 1067 (1983). Additionally, Herbert has failed to show any prejudice resulting from the consideration given to the supplemental affidavit. We hold that the magistrate did not err in his June 4, 1990, order awarding Dorothy attorney fees in the amount of $385.

■ The fifth issue Herbert raises is whether the magistrate erred in failing to impose sanctions, disbar, and/or impose punitive damages against Dorothy's counsel. Herbert contends that several actions by counsel violated I.R.C.P. 11(a)(1). We will not overrule the magistrate's denial of Herbert's motion for Rule 11 sanctions absent an abuse of discretion. *See Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 803 P.2d 993 (1991) (review of award of sanctions under Rule 11(a)(1)).

Herbert asserts that Dorothy's counsel failed to make reasonable inquiry into the facts of the case and the applicable law. As support for this contention, Herbert argues that the magistrate's judgment is substantially identical to the property division Herbert proposed in his complaint and in several offers of settlement. He asserts that by rejecting these offers, Dorothy's counsel unreasonably caused delay and greater litigation expense. Herbert basically argues that, if we conclude that the judgment is substantially identical to the relief requested by Herbert, then by necessity counsel violated Rule 11(a)(1) in rejecting the offers. We disagree.

■ Although we disagree with Herbert's apparent *per se* position, we cannot say that a court, in its discretion, may not take into consideration the relief requested or offer made by a party in relation to the ultimate relief granted in reaching its determination as to whether an attorney or party made reasonable inquiry or

acted in a manner as to harass or to cause unnecessary delay. Without concluding that the decree of divorce is substantially identical to the relief Herbert requested, we note that Dorothy sought, but did not receive, permanent maintenance, in addition to the disproportionate award of community assets. We cannot say that counsel's actions were unreasonable or designed to harass or to cause unnecessary delay.

■ Herbert also contends that counsel violated Rule 11 by arguing that Herbert had incurred large amounts of debt during the marriage without apparent intention of liquidating the debt, that he had committed adultery evidenced through "romantic letters" to a woman in Germany, and that he had been evasive in disclosing his financial status. Herbert asserts that counsel's representations with regard to these subjects "are false, libelous, defamatory ... and in flagrant violation of Rule 11." Herbert also asserts that counsel's filing of an affidavit for attorney fees in relation to Herbert's motion for Rule 11 sanctions was a "harassing tactic." Herbert contends that counsel's motion to reopen the case for additional evidence was "perhaps the most serious violation of Rule 11(a)(1)." After examining the record with respect to each of these grounds, we agree with the magistrate and district court that the actions by counsel did not amount to violations of Rule 11. We hold that Herbert has failed to show that the magistrate abused his discretion in denying the motion for Rule 11 sanctions.

Second, Herbert urges the disbarment of Dorothy's counsel pursuant to I.C. §§ 3–201, –301. Herbert has not shown that counsel violated these statutes and therefore, we deny his requested relief. Moreover, Herbert has not cited authority indicating that the Legislature or the Supreme Court has conferred upon this Court the authority to take such action.

■ Third, Herbert contends that counsel for Dorothy committed malpractice with respect to his representation of her. We decline to address this issue because Herbert is without standing to raise this issue.

Herbert did not have an attorney-client relationship with Dorothy's counsel, and counsel did not violate any duty owed to Herbert. *Johnson v. Jones*, 103 Idaho 702, 652 P.2d 650 (1982) (quoting *Sherry v. Diercks*, 29 Wash.App. 433, 628 P.2d 1336 (1981)).

Fourth, Herbert asks this Court to award punitive damages against Dorothy's counsel in favor of Dorothy, the state, and himself. Herbert admits that this issue was not raised below; however, he argues it should be considered because injustice would result if we do not. Herbert cites us to *Roberts v. Hollandsworth*, 582 F.2d 496 (9th Cir.1978). The law of Idaho and not the Ninth Circuit Court of Appeals is controlling on this issue. Because this issue was not raised below, but appeared for the first time in this appeal, we will not consider it. *Kinsela v. State, Dept. of Finance*, 117 Idaho 632, 790 P.2d 1388 (1990).

The fifth aspect of this issue is Herbert's request for *pro se* attorney fees. Although Herbert presents authority from other jurisdictions in an attempt to persuade us to reverse the rule in Idaho, we must follow the established precedent that a *pro se* party is not entitled to recover attorney fees. *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1986); *Swanson & Setzke, Chtd. v. Henning*, 116 Idaho 199, 774 P.2d 909 (Ct.App.1989). We deny Herbert's claim for attorney fees.

The next issue Herbert presents deals with one of the magistrate's specific findings which reads:

28. All of the disproportionate award to [Dorothy] is in lieu of permanent spousal maintenance, it being the intent of this Court that the debts of [Herbert] should not be dischargeable in bankruptcy.

Herbert contends that this finding violates his constitutional rights under the Fifth and Fourteenth Amendments. The court concluded that this matter was not reviewable because Herbert had not sought relief in bankruptcy. We agree. We "will not pass upon questions of constitutionality until presented in a cause demanding rulings thereon." *State v. Hightower*, 101 Idaho 749, 757, 620 P.2d 783, 791 (1980) (concerning argument that statute was unconstitutional). Any harm Herbert may incur, as a result of this finding, is speculative because there is no evidence that he has filed for bankruptcy. We decline to rule on this issue.

The final issue Herbert raises concerns his two motions to disqualify for cause the magistrate and district judge from any future dealings with this case pursuant to I.R.C.P. 40(d)(2)(A)(4). We utilize an abuse of discretion standard to review the respective denials of these motions. *Desfosses v. Desfosses*, 120 Idaho 27, 813 P.2d 366 (Ct.App.1991).

Herbert moved to disqualify the magistrate after the judgment and decree of divorce had been entered. Herbert stated in his affidavit that the magistrate was biased against him and in favor of Dorothy and her counsel because the magistrate had informed counsel that his affidavit for attorney fees should have included the specific time allotted to each delineated item. We conclude that this request by the magistrate was an effort to reach a just result on the issue of attorney fees, and does not amount to "coaching" in favor of counsel or bias against Herbert. Herbert also cited the opening remark of the magistrate at one of the hearings that he was calling the Bell case, and that he had indicated to the parties that the case would be called first. Herbert stated in his affidavit that because he and his attorney did not know that their case would be called first, the magistrate's statements indicate that Dorothy's counsel and the magistrate had reached a secret agreement. The magistrate's comments do not support the existence of a finding of bias.

The magistrate made an anomalous finding that he did not consider Herbert's affidavit in opposition to the order to show cause, dated March 28, 1989, in his decision. Herbert contends that this is evidence of the magistrate's bias. Herbert, however, has failed to show any bias against him based on this finding. The fact that Herbert was not found in contempt at the show cause hearing, had paid

maintenance through December, and it was found that his obligation to make maintenance payments terminated in December, all undermine any need the magistrate had to consider Herbert's affidavit.

Herbert also contends that the district judge was biased. In the appellate proceedings he attempted unsuccessfully to disqualify the district judge *after* the judge had issued his appellate decision. He asks us to hold that the disqualification should have been granted and that both the district judge and the magistrate are disqualified from participating in any future proceedings in this case.

Herbert first points to the fact that the district judge allowed only fifteen minutes for the appellate argument of each party. He argues that I.R.C.P. 83(x) makes the Idaho Appellate Rules (I.A.R.) applicable to appeals from the magistrate division to the district court, and that I.A.R. 37(b) allows thirty minutes per side unless "good cause" is shown for a different time limit. Herbert also contends that the judge did not allow him to rebut the arguments of opposing counsel, contrary to I.A.R. 37(c).

The district judge relied upon Rule 8 of the published local rules of the Fourth Judicial District in allotting fifteen minutes per side for argument. We have no reason to decide whether this procedure was correct·under the applicable rules, for the following reasons.

■ We have examined the transcript of the hearing in question where the judge advised the parties they would each have fifteen minutes for argument. Herbert did not request additional time, nor did he contend that any rule of court entitled him to additional time for argument. He used all of his allotted time without reserving any time for rebuttal. Herbert had submitted a comprehensive appellate brief to the court covering the points he discussed. He has failed to show how he was prejudiced by the procedure followed by the court. *See State v. Hayes,* 108 Idaho 556, 700 P.2d 959 (Ct.App.1985). More importantly, however, we find nothing in the record of the hearing which indicates to us any bias or prejudice on the part of the district judge.

■ The other reasons set forth in Herbert's affidavit for disqualifying the district judge concern Herbert's disagreement with the judge's conclusions that the magistrate's findings were supported by the record and not erroneous. Adverse rulings alone do not support the existence of a disqualifying prejudice. *Desfosses,* 120 Idaho 27, 813 P.2d 366. We conclude that the magistrate and district judge did not abuse their discretion in denying Herbert's motions to disqualify. We affirm the decisions of the magistrate and district judge denying Herbert's motions to disqualify.

■ Finally, we note that the district court's appellate decision addressed the need to remand the case to the magistrate division so that the magistrate could consider whether Herbert is entitled to compensation from the community for "temporary spousal maintenance" which the magistrate ordered him to pay at a hearing on December 22, 1988. The district court decided, and we agree, that the parties' 1986 agreement did not make these payments Herbert's separate debts. Because Herbert was ordered to make these payments, Herbert was entitled to compensation from the community for them. If the trial court considered this in its division of property, there is no finding to that effect. The district court, therefore, remanded the case stating that the trial court should address this issue on remand. In the present appeal, neither party has addressed the issue of whether the district court was correct in remanding for the above purpose. Accordingly, we will uphold this order.

In conclusion, we affirm the judgment and decree of divorce entered by the magistrate, subject only to the remand directive of the district court for the magistrate to address the sole issue of whether Herbert is to be given credit for payments of temporary spousal maintenance ordered by the court. The parties shall pay their own attorney fees on appeal. We award costs to Dorothy. I.A.R. 40.

WALTERS, C.J., and SILAK, J., concur.